UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Tremaine Belton,<br><br>　　　　　　　　　　　　　　　Plaintiff,<br><br>　　　　-v-<br><br>The County of Nassua, New York,[1] *et al.*<br><br>　　　　　　　　　　　　　　　Defendants. | 2:24-cv-2353<br>(NJC)(JMW) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is a motion to proceed *in forma pauperis* ("IFP") filed by pro se Plaintiff Tremaine Belton ("Belton") in relation to his Complaint filed while incarcerated at the Nassau County Correctional Center (the "Jail"). (IFP Mot., ECF No. 7; Compl., ECF No. 1.) For the reasons that follow, the Court grants Belton's IFP motion and dismisses the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1).

## BACKGROUND

On March 25, 2024, Belton filed a Complaint against the "County of Nassua , New York" ("Nassau County"), the "Sheriff of Nassau in his official and individual capacity, and his subordinates in his or her official/and individual capicity (Anthony Larocco) Sheriff" ("Sheriff LaRocco")[2] and the Warden of the Jail ("Warden" and collectively, "Defendants") using the Court's civil rights complaint form for actions brought pursuant to 42 U.S.C. § 1983 ("Section

---

[1] The caption and excerpts from the Complaint have been reproduced here exactly as they appear in the original. Errors in spelling, punctuation, and grammar have not been corrected or noted.

[2] The Court understands that Plaintiff intends to name Anthony J. LaRocco, the present Nassau County Sheriff, as a defendant.

1983"). (Compl. at 2–3.) Belton did not pay the filing fee; nor did he file a motion to proceed IFP at that time. Accordingly, by Notice of Deficiency dated April 1, 2024, the Court instructed Belton to either pay the filing fee or to complete and return the enclosed IFP application within fourteen days in order for his case to proceed. (*See* Not., ECF No. 3.) The Notice was returned to the Court on April 15, 2024, with the notation that it was undeliverable as addressed. (ECF No. 5.) Accordingly, by Order dated April 18, 2024 (the "Order"), the Court, as a one-time courtesy, updated Belton's address to the Franklin Correctional Facility and re-mailed the Notice together with the Order. (*See* Elec. Order, Apr. 18, 2024.) On May 6, 2024, Belton filed his IFP motion. (IFP Mot.)

## I. The Complaint

Belton alleges that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment, and suffered deprivations of his Fourth Amendment rights and Fourteenth Amendment due process right when he was not permitted to attend the wake or funeral services for his father. (Compl. at 4.) The Complaint is brief. In its entirety, Belton alleges:

> On or aboud February 9th 2024 Nassau County Corrections Department was notified by me and my Aunt, that my father past away. On or around February 9th 2024, 4:10 PM Brooklyn New York, my father past and the Nassau County Corrections was notified at that time by myself and my Aunt.
>
> . . .
>
> My birth father pasted away, the facility was notified by my Aunt in a timely manner about the services, and for me to attend the funeral or wake. I as well as my aunt spoke with with the Prostestant Chaplin, and I also spoke to the unit officers and Mental health Department social workers. The Chaplin instructed my Aunt, what documents she needed to send in order for me to attend. One the documents was declared, I'd be able to Attend, (Birth Certificate) and escorted by the staff of the transit Department to my father's funeral or whatever services I was able to attend on the 16th of February. My Aunt completed what she was instructed to do, and the funeral Instructer faxed the paperwork to the Department of Corrections. From that point I haven't heard back from the Chaplin or none of the other staff at

the Sheriff's Dept. about attending the services for my father. (*Id.* at 3–4.) In the space on the form Complaint that calls for a description of any injuries suffered as a result of the alleged events, Belton wrote: "My injuries are (Cruel and Unusual Punishment), (Pain and Suffering) which violates my 8th amendment of the U.S. Constitution, that guarantees' me by Law. And also the (4th and 14th) Due Process!" (*Id.* at 4.) Belton also alleges that he is "having nightmares about my father and [has a] loss of sleep." (*Id.* at 5.)

For relief, Belton seeks to recover damages in the amount of $100,000 in compensatory damages and $50,000 in "punitives damages," as well as "All other relief that is Just and equitable and fair." (*Id.* at 6.) Belton clarifies that his demand for $50,000 is comprised of compensatory and punitive damages in the sum of twenty-five thousand from the "Nassua County Sheriff department for its malice and foul acts against the plaintiff to Attend his father's funeral and memorible service, and the matter has caused emotional distress, heartache and pain and suffering as well as nightmares!" (*Id.* at 7.) Finally, Belton claims he has "suffered in reversable damage to the structer of the plaintiff everyday life's functions and normal Life, and has set his mental health on a downhill course and which has kept the plaintiff in a unsafe state of mind and distractions" for which he seeks "Twenty five Thousand dollars [for] a totle of One hundred and Fifty thousand Dollars." (*Id.* at 8.)

## LEGAL STANDARDS

### I.     *In Forma Pauperis*

Upon review of Belton's IFP application (IFP App.), the Court finds that Belton is qualified by his financial status to commence this action without the prepayment of the filing fee. Therefore, the application to proceed IFP is granted.

## II.     Sufficiency of the Pleadings

Given that Belton is proceeding IFP, the Court is required to "review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity . . . ." 28 U.S.C. § 1915A(a).[3] At the pleading stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the Complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009)), *aff'd*, 569 U.S. 108 (2013).

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quotation marks and citation omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (quotation marks omitted).

Nevertheless, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood*

---

[3] The term "prisoner" is defined in this statute to include "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

*Dev.*, 76 F.4th 130, 144 (2d Cir. 2023), *petition for cert. filed*, No. 23-642 (Dec. 14, 2023). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79 (citation omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The factual allegations of a complaint must be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quotation marks omitted).

If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). If, however, amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Id.*

## DISCUSSION

### I. Section 1983 Claims

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *Cty. of Oklahoma Cty. v. Tuttle*, 471 U.S. 808, 816 (1985)). To maintain a

Section 1983 action, a plaintiff must show that the defendant (1) acted under color of state law (2) to deprive the plaintiff of a right arising under the Constitution or federal law. *See id*. Here, Belton alleges he was subjected to cruel and unusual punishment and was denied due process in violation his Eighth and Fourteenth Amendment rights[4] when he was not permitted to leave the Jail to attend the wake and/or funeral for his father. (Compl. at 3–4.)

### A. Eighth Amendment Claim

Generally, there is no constitutional right to attend memorial services while incarcerated. *See, e.g., Garrett v. Cummberbatch*, No. 23-cv-2343 LTS, 2023 WL 3582631, at *2–3 (S.D.N.Y. May 22, 2023) ("To the extent Plaintiff is asserting a claim based on her inability to attend her relative's funeral, she fails to state a claim because prisoners and pretrial detainees do not have a constitutional right to attend the funeral of a relative.") (citing *Verrone v. Jacobson*, No. 95-cv-10495, 1999 WL 163197, at *5 (S.D.N.Y. 1999) (noting that "a prisoner does not have a protected right to attend the funeral of a relative")); *Green v. Coughlin*, No. 94-cv-3356, 1995 WL 498808, at *1 (S.D.N.Y. Aug. 22, 1995) ("Generally, prison inmates do not have a constitutionally protected right under § 1983 to attend a funeral . . . ."); *Mercer v. Green Haven Corr. Fac.*, No. 94-cv-6238, 1998 WL 85734, at *3 (S.D.N.Y. Feb. 27, 1998) ("[A]n inmate does not have a constitutional right to attend a family member's funeral."); *Colon v. Sullivan*, 681 F. Supp. 222, 223 (S.D.N.Y. 1988) ("Denying a prisoner permission to attend the funeral of a relative does not involve the denial of a liberty interest protected by the Constitution.").

---

[4] Belton also alleges that his due process claim arises under the Fourth Amendment. (Compl. at 4.) The Fourteenth Amendment due process claim "merges with his Fourth Amendment claim because the former claim arises from the same set of actions that allegedly violated his Fourth Amendment rights." *Hernaiz v. Carlson*, No. 3:24-cv-116 JAM, 2024 WL 2089355, at *4 (D. Conn. May 9, 2024) (quoting *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008)). The Court thus considers Belton's due process claim exclusively under the Fourteenth Amendment.

6

Although it has not decided the issue, the Second Circuit has suggested, however, that in the context of a convicted prisoner, "if, in order to cause a particular inmate psychological distress, prison officials deny the inmate leave which is otherwise available to attend a parent's funeral, such conduct may in some circumstances constitute cruel and unusual punishment." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999).

Unnecessary and wanton infliction of pain violates the Eighth Amendment. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Gregg v. Georgia*, 428 U.S. 153 (1976)); *see also Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Here, the Complaint is wholly devoid of allegations that plausibly suggest that the denial of Belton's request to attend his father's funeral involved unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Indeed, the New York State statute governing such requests explicitly affords the individual authorized to rule on the request discretion to grant or deny it.[5]

Nor does Belton allege that he ever had any interaction with Sheriff LaRocco or the Warden prior to the denial of his request. Thus, there exists no basis for the Court to infer, even upon a liberal construction, that these Defendants wantonly inflicted "pain" upon Belton in

---

[5] Section 509 of the New York Correction Law provides, in relevant part:

> The sheriff of a local correctional facility or his designee may permit any inmate confined in his local correctional facility to attend the funeral of his or her father, mother, guardian or former guardian, child, brother, sister, husband, wife, grandparent, grandchild, ancestral uncle or ancestral aunt within the state, . . . but the exercise of such power shall be subject to such rules and regulations as the commission shall prescribe, respecting the granting of such permission, duration of absence from the institution, custody, transportation and care of the inmate, and guarding against escape.

N.Y. Correction Law § 509.

denying the request sufficient to rise to the level of an Eighth Amendment violation. *See Roman v. Donelli*, 616 F. Supp. 2d 299, 307 (N.D.N.Y 2007) (dismissing Eighth Amendment claim based on denial of request by an incarcerated person to attend wife's funeral); *Williams v. New York*, No. 13-cv-0003Sc, 2015 WL 249275, at *2 (W.D.N.Y Jan. 15, 2015) ("To the extent plaintiff's complaint can be construed as alleging a cruel and unusual punishment claim under the Eight Amendment in relation to the denial of approval of a death-bed visit, it too must be dismissed because there are no allegations to support a claim that the denial involved the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."). Belton's Eighth Amendment claim is not plausible and is thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1).

### B. Fourteenth Amendment Claim

"In order for plaintiff to state a claim for the denial of due process, he must first allege that he was deprived of a liberty or property interest." *Roman*, 616 F. Supp. 2d at 305. A liberty or property interest protected by due process may be established by the Constitution itself or by state law. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) ("Protected liberty interests 'may arise from two sources-the Due Process Clause itself and the laws of the States.'") (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). As noted above (*see supra* at 6), "there is no constitutionally protected liberty or property interest in attending the funeral of a family member." *Roman*, 616 F. Supp. 2d at 305 (collecting cases); *see also Garrett*, 2023 WL 3582631, at *2–3 (collecting cases). Thus, the denial of Belton's request to attend his father's wake or funeral does not infringe on a constitutionally protected liberty or property interest that triggers due process protection.

8

"In order for a state law, regulation, or directive to create a protected liberty or property interest, the state must use 'explicitly mandatory language,' must place 'substantive limitations on official discretion,' and must require that a 'particular result is to be reached' upon the finding of substantive predicates." *Roman*, 616 F. Supp. 2d at 305 (quoting *Cruz v. Sielaff*, 767 F. Supp. 547, 550 (S.D.N.Y. 1991)). As set forth above (*see supra* at 7, n.5), the authority for funeral visits for a person confined to a local correctional facility in New York is embodied in New York Correction Law § 509. This statute makes clear that "the exercise of such power shall be subject to such rules and regulations as the commission shall prescribe, respecting the granting of such permission, duration of absence from the institution, custody, transportation and care of the inmate, and guarding against escape." N.Y. Correction Law § 509. Additionally, there is "no mandatory language in this statute." *Dove v. Doe*, No. 9:19-cv-0037GTS TWD, 2019 WL 1779844, at *3–4 (N.D.N.Y. Apr. 23, 2019). More specifically, there is no language in the statute that would establish that an incarcerated person has a liberty interest in being afforded the opportunity to attend a guardian or relative's funeral. "Thus, the state has not created through statute (or otherwise) a liberty interest regarding escorted funeral visits." *Id.* (dismissing an incarcerated person's Section 1983 claims alleging a deprivation of Fourteenth Amendment right to due process in relation to the denial of his request to attend his mother's funeral).

Even if Belton had plausibly alleged a liberty interest, which he has not, his due process claim fails for the additional reason that the Complaint does not include any factual allegations from which the Court could reasonably infer conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Garrett*, 2023 WL 3582631, at *2 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848, n.8 (1998)); *see also Ferran v. Town of*

9

*Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (governmental action must be "arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised," to be actionable as a substantive due process violation) (quotation marks omitted). As a result, Belton's Fourteenth Amendment claim is not plausible and is thus dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b) for failure to state a claim upon which relief may be granted.

### C. Personal Involvement

Further, even if Belton had alleged a plausible deprivation of his Eighth Amendment or Fourth Amendment rights, the Complaint's scant allegations are insufficient to support plausible Section 1983 claims against Sheriff LaRocco and the Warden. As the Second Circuit has made clear, in order "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Belton has not alleged any conduct or inaction attributable to either of Sheriff LaRocco or the Warden. It appears that Belton has brought Section 1983 claims against them solely due to the supervisory positions they hold. Indeed, apart from the caption and list of Defendants, Belton has not mentioned these Defendants in the body of the Complaint. "Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff." *Sprole v. Underwood*, No. 318CV1185LEKML, 2019 WL 4736241, at *1 n.1 (N.D.N.Y. Sept. 27, 2019) (citing *Cipriani v. Buffardi*, No. 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007)); *see also Crown v. Wagenstein*, No. 96-CV-3895, 1998 WL 118169, at *2 (S.D.N.Y. Mar. 16, 1998) (dismissing claims asserted against the

defendant-superintendent because the complaint "mention[ed him] only in the caption, and fail[ed] to allege any act or omission by [him]"). Thus, Belton's Section 1983 claims against Sheriff LaRocco and the Warden are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1).

### D. Municipal Liability

Similarly, Belton has not plausibly alleged a Section 1983 claim against Nassau County. In order to state a Section 1983 claim against a municipal entity, a complaint must allege sufficient facts to show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. Cty. of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). Thus, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citations omitted). "The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe*, 542 F.3d at 36 (citing *Pembaur v. Cty. of Cincinnati*, 475 U.S. 469, 478 (1986)).

The Complaint does not allege any facts from which this Court can reasonably construe that the challenged conduct was undertaken pursuant to a municipal custom, policy or practice. Thus, this claim is implausible, and is dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1).

### II. State Law Claims

Under 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over

11

all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims that may be reasonably construed from the Complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state-law claims contained in Belton's Complaint.

### III. Leave to Amend

A pro se plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. Cty. of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quotation marks omitted). Nevertheless, where amendment of the complaint would not cure the substantive defects of the claim, leave to amend should be denied. *Cuoco*, 222 F.3d at 112; *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Here, in an abundance of caution, Belton is granted leave to file an amended complaint within thirty (30) days from the date of this Order. *See Cruz v. Gomez*, 202 F.3d 593, 596–98 (2d Cir. 2000) (pro se plaintiffs should be afforded an opportunity to amend complaint

12

prior to dismissal). To be clear, Belton shall name as defendants, to the best of his ability, the individuals personally involved in the challenged conduct or inaction concerning his request to attend his father's funeral. *See Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003) (stating that plaintiff must show deliberate indifference on the part of a "particular defendant"). While pleading these facts, Belton should specify what each individual defendant did or failed to do. If Belton does not presently know the identity of any such individual, he shall name them as a "John Doe" or "Jane Doe" and describe such individuals including the date, time, and location of the alleged constitutional violation in which each John or Jane Doe defendant was involved.

Any amended complaint shall be clearly titled "Amended Complaint," bear docket number 24-cv-2353(NJC)(AYS), and contain a short and plain statement of Belton's claim against each individual or entity named as a defendant. If Belton does not timely file an amended complaint, absent a showing of good cause, the Court shall enter judgment and close this case.

## CONCLUSION

For the reasons stated above, this Court grants Belton's IFP motion (ECF No. 7) and dismisses the Complaint (ECF No. 1) pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii) and 1915A(b)(1) with leave to amend as set forth above. (*See supra* at 12–13.) The Clerk of the Court shall mail a copy of this Order to Belton at his address of record in an envelope marked "Legal Mail" and note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore IFP status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Dated: Central Islip, New York
June 13, 2024

                                                     */s/ Nusrat J. Choudhury*
                                                   NUSRAT J. CHOUDHURY
                                                   United States District Judge